```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         BLUEFIELD

LACY WRIGHT, JR., and
JOHN DOES 1-100,

       Plaintiffs,

v.                                 CIVIL ACTION NO.: 1:11-00718

FIRST CAROLINA STATE BANK,
a North Carolina Corporation,

       Defendant.
```

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion to dismiss or, in the alternative, motion to transfer venue. (Doc. # 4). For reasons explained more fully below, the defendant's motion to dismiss is **GRANTED** and the motion to transfer venue is **DENIED** as moot.

### I. Factual and Procedural History

Plaintiff, Lacy Wright, Jr. ("Wright"), brought this action against defendant First Carolina State Bank ("First Carolina" or "FCSB") on September 26, 2011, in the Circuit Court of McDowell County, West Virginia. According to the allegations in the Complaint, FCSB violated the West Virginia Uniform Securities Act, the rules and regulations of the Federal Deposit Insurance Corporation ("FDIC") and the North Carolina Commission of Banks, and was otherwise negligent in its operation of the FCSB. See Complaint ¶¶ 9-15. According to Wright, the negligence of FCSB and its alleged violations of law have caused harm to Wright, a

1

stockholder in First Carolina, and others similarly situated. See id. Wright seeks general damages in the amount of $75,000, plus punitive damages for defendant's conduct.

On October 10, 2011, FCSB removed the case to this court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. Wright is a citizen of West Virginia and FCSB is a corporation organized under the laws of North Carolina with its principal place of business in Rocky Mount, North Carolina. On November 21, 2011, FCSB filed the instant motion to dismiss for lack of personal jurisdiction. In the alternative, defendant asks the court to transfer venue to the Eastern District of North Carolina.

In its motion to dismiss, FCSB contends that it does not possess sufficient contacts with West Virginia to create personal jurisdiction. In his Complaint, however, Wright asserts that FCSB "regularly operates, conducts and transacts business on a regular basis in multiple states, including the States of Virginia and West Virginia." Complaint ¶ 5. Furthermore, in his response to FCSB's motion, Wright contends that because FCSB sold stock to him in West Virginia and, by doing so, allegedly violated West Virginia's Uniform Securities Act, that personal jurisdiction exists.

2

## II. Standard of Review

Plaintiff bears the ultimate burden of proving personal jurisdiction by a preponderance of the evidence. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005). When "the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. But when affidavits are submitted as to the jurisdictional question, "[i]n ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by defendant's affidavit, must be taken as true." Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984) (quoting Black v. Acme Markets, Inc., 564 F.2d 681, 683 n.3 (5th Cir. 1977) (emphasis added)).

"Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." Carefirst of Md., Inc. v.

Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). Therefore, "for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Id. "Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry." In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).

"To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not 'offend traditional notions of fair play and substantial justice.'" Vass v. Volvo Trucks North America, Inc., 304 F. Supp.2d 851, 854 (S.D.W. Va. 2004) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person 'purposely avails itself of the privilege of conducting activities within the forum state.'" Id. (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). As the Vass court explained,

4

> This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id. at 476.

Id.

As the Supreme Court has noted, courts have "differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). "To establish `general jurisdiction' over a foreign corporation, the plaintiff must show that the corporation's activities in the state are 'continuous and systematic,' which is a more demanding standard that is necessary for establishing `specific jurisdiction.'" Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 n.3 (4th Cir. 2009). "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction." ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

The United States Court of Appeals for the Fourth Circuit has articulated a three-part test for determining whether specific jurisdiction exists in a given case. A court is to consider:

    (1)    the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State;

    (2)    whether the plaintiffs' claims arise out of those activities directed at the State; and

    (3)    whether the exercise of personal jurisdiction would be constitutionally reasonable.

Consulting Eng'rs, 561 F.3d at 278.  In discussing the first factor, the Fourth Circuit noted that it "articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state."  Id. Factors a court may consider "in seeking to resolve whether a defendant has engaged in such purposeful availment" include:

    (1)    whether the defendant maintains offices or agents in the forum state;

    (2)    whether the defendant owns property in the forum state;

    (3)    whether the defendant reached into the forum state to solicit or initiate business;

    (4)    whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

    (5)    whether the parties contractually agreed that the law of the forum state would govern disputes;

    (6)    whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

    (7)    the nature, quality and extent of the parties' communications about the business being transacted; and

>     (8)  whether the performance of contractual duties was to occur within the forum.

Id. Only if a plaintiff satisfies the first prong of the test for specific jurisdiction must a court consider the second and third prongs. See id.

### III. Analysis

A.  Motion to Dismiss

In support of its motion to dismiss, FCSB offered the affidavit of William M. Griffith, Jr., the Interim President and Chief Executive Officer of First Carolina State Bank. See Affidavit of William M. Griffith, Jr. (attached as Exhibit 1 to Defendant's Motion to Dismiss). According to Griffith's affidavit, which Wright does not contest, Reidsville Community Bank ("RCB") is a division of FCSB, a North Carolina corporation with its principal place of business in Rocky Mount, North Carolina. See id. at ¶ 3. FCSB maintains three branch locations, all of which are in North Carolina. See id. at ¶ 4.

On or about January 2008, plaintiff Wright contacted Tim Webb, the proposed Executive Vice President and Chief Credit Officer of RCB, by telephone regarding the purchase of RCB stock. See id. at ¶ 7. Mr. Webb was at RCB in North Carolina when he received Wright's telephone call. See id. According to Griffith, Webb did not initially contact Wright or intentionally solicit him to purchase RCB stock. See id. at ¶ 8. Griffith stated, however, that RCB would have likely mailed a prospectus

7

to Wright in West Virginia. See id. at ¶ 9. On or about January 30, 2008, Wright executed a RCB Subscription Agreement to purchase 100 shares of RCB stock. See id. at ¶ 10.

Thereafter, in October 2008, RCB became a division of FCSB instead of becoming a state bank as it has originally proposed. See id. at ¶ 11. On or about October 1, 2008, RCB offered subscribers who had initially invested in RCB the option to transfer their investment to FCSB or have any previous investment in RCB returned to them. See id. at ¶ 12. To that end, FCSB would have mailed a prospectus for FCSB to Wright in West Virginia, explaining that RCB would become a division of FCSB. See id. at ¶ 13.

On or about October 23, 2008, Webb sent a fax to Wright containing the signature page of the FCSB Subscription Agreement. See id. at ¶ 14. Wright executed the FCSB Subscription Agreement on or about October 24, 2008. See id. On or about October 29, 2008, Tracy Musick, Proposed Operations Assistant Manager of RCB, emailed Wright to let him know that FCSB had received his executed subscription agreement via fax but that the originals would still need to be returned to FCSB in North Carolina. See id. at ¶ 15. On November 4, 2008, Wright mailed an executed FCSB Subscription Agreement Signature Page to FCSB in Reidsville, North Carolina. See id. at ¶ 16. Thereafter, on December 15,

2008, FCSB issued 100 shares of FCSB common stock to Wright. See id. at ¶ 17.

Concerning defendant's ties with West Virginia, Griffith testified that no one with RCB or FCSB solicited Wright to purchase RCB or FCSB stock. See id. at ¶ 20. FCSB has no West Virginia stockholders other than Wright. See id. at ¶ 21. FCSB has no offices or branch locations in West Virginia nor does it own or lease real property in West Virginia. See id. at ¶ 22. FCSB does not have a telephone listing in West Virginia, advertise in West Virginia, have a West Virginia bank account, or pay taxes in West Virginia. See id. at ¶¶ 23, 24. FCSB does not contract to supply services or things in West Virginia nor does it sell its products in West Virginia. See id. at ¶ 24. According to Griffith, FCSB does not regularly make loans in West Virginia or sell its stock to West Virginia residents. See id. at ¶ 26. All of FCSB's officers, directors, and employees live in North Carolina and FCSB has never sent its personnel to West Virginia for any business purpose. See id. at ¶¶ 27, 28. Wright has not filed an affidavit to contradict the substance of Mr. Griffith's affidavit nor did he seek limited discovery on the jurisdictional issue.

To the extent that Wright attempts to establish that this court has general jurisdiction over FCSB, see Complaint at ¶ 5,

9

that attempt fails.[1]  Wright has not shown that FCSB's activities in West Virginia are "continuous and systematic."  ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) ("To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction.").  A single sale of stock to one person does not provide the sort of contacts necessary to establish general jurisdiction.  See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 624 (4th Cir. 1997) (holding no general jurisdiction available for a defendant with twenty-six customers in forum state which made up less than 1% of its nationwide sales volume).

　　　Likewise, Wright fails to establish that this court possesses specific jurisdiction over FCSB because he has not shown that FCSB has purposefully availed itself of conducting activities in West Virginia.  The extent of FCSB's contacts with Wright consisted of a telephone call from Wright to Webb, two faxes and an email from FCSB to Wright confirming Wright's

---

[1] Wright's assertion that "[u]pon information and belief, . . . First Carolina Bank [ ] regularly operates, conducts and transacts business on a regular basis in . . . West Virginia" is too vague to establish a prima facie case of jurisdiction, especially in light of Mr. Griffith's uncontroverted affidavit. See, e.g., Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 214-15 (4th Cir. 2002) ("Base Metal simply cannot support jurisdiction in Maryland by making vague, unsubstantiated claims. . . .").

execution of the signature pages of the Subscription Agreements, and FCSB's mailing of two prospectuses to Wright only after Wright had initiated contact with FCSB.  The quality and nature of these contacts falls woefully short of demonstrating that FCSB purposefully availed itself of the privilege of doing business in West Virginia to an extent sufficient to justify personal jurisdiction.  Indeed, FCSB does not have offices or employees in West Virginia, nor does it own property there.  FCSB did not reach into West Virginia to solicit or initiate business with Mr. Wright, rather it was Mr. Wright who first reached out to FCSB in North Carolina.  FCSB has not engaged in significant or long-term business activities in West Virginia.  FCSB did not make in-person contact with Mr. Wright in West Virginia regarding the business relationship.  Furthermore, the record does not show any contractual agreement by the parties that the law of West Virginia would govern any disputes nor was the performance of contractual duties to occur within West Virginia.  In summary, FCSB's contacts with West Virginia "were sufficiently attenuated that it would be a manifest injustice to hale it into [West] Virginia court."  Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 281 (4th Cir. 2009) (four telephone calls and twenty-eight emails not sufficient contacts to establish court's exercise of personal jurisdiction over nonresident defendant).

11

## IV. Conclusion

Based on the foregoing, the court **GRANTS** defendant's motion to dismiss and **DENIES** the motion to transfer venue to the Eastern District of North Carolina as moot.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 17th day of September, 2012.

ENTER:

David A. Faber
Senior United States District Judge